UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YEHUDA GOLDBERGER, ANTHONY PALMA, and FIREARMS POLICY COALITION, INC.,

Plaintiffs,

- against -

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF NEW YORK, STEVEN G. JAMES, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF THE NEW YORK STATE POLICE, JESSICA TISCH, IN HER OFFICIAL CAPACITY AS NEW YORK CITY POLICE COMMISSIONER, and ALVIN BRAGG, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR NEW YORK COUNTY,

Defendants.

---

26-CV-2325 (NSR)

**MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS**

LETITIA A. JAMES
Attorney General
State of New York
*Attorney for State Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8213

DANIEL LUEDTKE
Assistant Attorney General
*Of Counsel*

# Table of Contents

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF ALLEGATIONS ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 4

POINT I: ATTORNEY GENERAL JAMES IS NOT A PROPER PARTY TO THIS CASE .. 4

POINT II: PLAINTIFFS LACK STANDING TO SUE ........ 7

A. FPC Lacks Standing ........ 7

B. Plaintiff Palma and Plaintiff Goldberger Lack Standing to Sue Attorney General James ........ 10

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.H. by E.H. v. N.Y. State Dep't of Health*,
147 F.4th 270 (2d Cir. 2025) ....................9

*Aguayo v. Richardson*,
473 F.2d 1090 (2d Cir. 1973)....................8

*Antonyuk v. Chiumento*,
89 F.4th 271 (2d Cir. 2023) ....................10

*Antonyuk v. James*,
120 F.4th 941 (2d Cir. 2024) ....................10

*Chrysafis v. James*,
534 F. Supp. 3d 272 (E.D.N.Y. 2021) ....................6

*Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*,
98 F.4th 386 (2d Cir. 2024) ....................9

*Conn. Citizens Def. League, Inc. v. Lamont*,
6 F.4th 439 (2d Cir. 2021) ....................10

*Doe v. Annucci*,
No. 14-CV-2953, 2015 WL 4393012 (S.D.N.Y. July 15, 2015)....................4

*Ex parte Young*,
209 U.S. 123 (1908)....................4

*Gazzola v. Hochul*,
No. 22-CV-1134, 2025 WL 2771835 (N.D.N.Y. Sept. 26, 2025)....................7

*Gill v. Whitford*,
585 U.S. 48 (2018)....................7

*Goldstein v. Hochul*,
680 F. Supp. 3d 370 (S.D.N.Y. 2023).................... 4-6, 11

*Hardaway v. Nigrelli*,
639 F. Supp. 3d 422 (W.D.N.Y. 2022) ....................10

*HealthNow New York, Inc. v. New York*,
739 F. Supp. 2d 286 (W.D.N.Y. 2010) ....................6

*Hulinsky v. Cnty. of Westchester*,
670 F. Supp. 3d 100 (S.D.N.Y. 2023)....................9

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ........................................................................................8

*Irish Lesbian & Gay Org. v. Giuliani*,
143 F.3d 638 (2d Cir. 1998) ........................................................................................9

*League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Sup'rs*,
737 F.2d 155 (2d Cir. 1984) ........................................................................................8

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003) ........................................................................................3

*Luckett v. Bure*,
290 F.3d 493 (2d Cir. 2002) ........................................................................................3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........................................................................................7, 12

*Makarova v. U.S.*,
201 F.3d 110 (2d Cir. 2000) ........................................................................................3

*Massapequa Union Free Sch. Dist. v. N.Y. State Bd. of Regents*,
809 F. Supp. 3d 33 (E.D.N.Y. 2025) ........................................................................................9

*Mulgrew v. U.S. Dep't of Transp.*,
750 F. Supp. 3d 171 (S.D.N.Y. 2024) ........................................................................................4

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ........................................................................................3

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*,
894 F.3d 95 (2d Cir. 2018) ........................................................................................11

*Nnebe v. Daus*,
644 F.3d 147 (2d Cir. 2011) ........................................................................................8

*People v. Cuttita*,
7 N.Y.3d 500, 858 N.E.2d 318 (2006) ........................................................................................5

*Rodriguez v. Winski*,
444 F. Supp. 3d 488 (S.D.N.Y. 2020) ........................................................................................9

*Shipping Fin. Serv. Corp. v. Drakos*,
140 F.3d 129 (2d Cir. 1998) ........................................................................................4

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ........................................................................................8

*Ulrich v. Mane*,
383 F. Supp. 2d 405 (E.D.N.Y. 2005) ....................5

*United States v. Rahimi*,
602 U.S. 680 (2024) ....................10

*United States v. Rivers*,
No. 24-CR-6154, 2025 WL 1006338 (W.D.N.Y. Apr. 4, 2025) ....................8

*Warden v. Pataki*,
35 F. Supp. 2d 354 (S.D.N.Y. 1999) ....................4

*Warth v. Sedin*,
422 U.S. 490 (1975) ....................7

## Constitutions

First Amendment ....................5

Second Amendment ....................1-3, 5, 10

Eleventh Amendment ....................4-7

Fourteenth Amendment ....................1, 3, 5

## State Statutes

New York Executive Law § 63 ....................4-6, 11

New York Penal Law
§ 265.01-e(2)(c) ....................5
§ 265.01-e(2)(t) ....................1-3, 5-6, 11-12

## Federal Statutes

42 U.S.C.
§ 1983 ....................1, 8-10

Civil Rights Act ....................8

## Rules

Fed. R. Civ. P. § 12(b)(1) ....................1, 3

## PRELIMINARY STATEMENT

Defendants New York State Attorney General Letitia James ("Attorney General James") and New York State Police Superintendent Steven G. James ("Superintendent James") (collectively, "State Defendants"), sued in their official capacities, respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure § 12(b)(1) to dismiss all claims against Attorney General James, as well as Plaintiff Firearms Policy Coalition, Inc.'s ("FPC") claims.

Plaintiffs FPC, Anthony Palma, and Yehuda Goldberger (collectively, "Plaintiffs") claim that New York Penal Law § 265.01-e(2)(t), which bans the possession of firearms, rifles, and shotguns in Times Square (the "Times Square Law"), violates the Second and Fourteenth Amendments. (Dkt. No. 33). As such, Plaintiffs seek, in relevant part, a declaratory judgment that the Times Square Law infringes upon Plaintiffs' right to bear arms, as well as injunctive relief restraining enforcement of the Times Square Law. *Id*.

Attorney General James must be dismissed from the action on the grounds that she is not a proper party as she does not have a specific duty to enforce the Times Square Law and because Plaintiffs Palma and Goldberger lack standing to assert their claims against her. Additionally, FPC's claims, which are brought on behalf of its members, must also be dismissed as against the State Defendants due to a lack of standing, as 42 U.S.C. § 1983 requires parties to bring actions on their own behalf.

## STATEMENT OF ALLEGATIONS

Plaintiff Goldberger, a resident of Rockland County, New York, alleges that New York City and Rockland County issued him handgun licenses. (Dkt. No. 33, ¶ 8). Plaintiff Goldberger

claims that he travels to and through Times Square for both work and personal reasons, during which he is forced to disarm. (*Id*. at ¶ 35).

Plaintiff Palma, a resident of Orange County, New York, alleges that Orange County issued him a handgun license and that he regularly carries a firearm for self-defense. (*Id*. at ¶¶ 9, 36). Plaintiff Palma claims that he frequently visits Times Square and travels through it to see his family in the Lower East Side. (*Id*. at ¶ 38). He claims that he has not applied for a license to carry in New York City because he would nonetheless have to disarm as a result of the Times Square Law. (*Id*. at ¶¶ 37–38).

Plaintiffs Palma and Goldberger are both members of FPC, a non-profit organization incorporated in Delaware with no apparent place of business in New York State. (*See id.* at ¶ 10). FPC's alleged purpose includes serving its members by "defending and promoting Second Amendment protected rights, advancing individual liberty, and restoring freedom." (*Id*.). As such, FPC purports to prosecute the instant action "on behalf of its members," though fails to identify any affected members other than Plaintiffs Palma and Goldberger. (*Id*.).

Plaintiffs argue that Times Square's central placement "functionally bars carry elsewhere…and severely infringes the fundamental, individual right to bear loaded, operable handguns outside the home for millions of individuals…including the Plaintiffs, their similarly situated members, and others like them." (*Id*. at ¶ 6). In support of this position, Plaintiffs characterize Times Square as "a large and arbitrarily designed group of city blocks" with "no special or designated entry points" or individual screenings for entry. (*Id*. at ¶ 29). They further assert that Times Square's pedestrian activity and crime statistics are not materially different from other areas of Manhattan. (*Id*. at ¶¶ 30–31).

As a result of these perceived issues, Plaintiffs' sole cause of action alleges that the Times Square Law infringes on their Second and Fourteenth Amendment rights as it "deprives individuals of the right to keep and bear arms in what is indisputably a public place where the need for self-defense may arise." (*Id*. at ¶ 4, Dkt. 2; ¶¶ 40-43). Plaintiffs claim that the law runs afoul of the United States Supreme Court's holding in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) that there is no historical basis for declaring Manhattan a sensitive location due to its crowded nature and protection by the New York City Police Department. (*Id*. at ¶ 4, Dkt. 2; ¶ 5).

Ultimately, Plaintiffs Palma and Golder, as well as FPC's similarly situated members, "desire to exercise their right to bear arms by carrying in public for lawful purposes…." (*Id*. at ¶ 43). They, therefore, seek a declaratory judgment that the Times Square Law and its enforcement "infringe upon Plaintiffs' right to bear arms protected under the Second and Fourteenth Amendments." (*Id*. at ¶ 1, Dkt. 14). They also seek "[i]njunctive relief restraining Defendants…from enforcing" the Times Square Law. (*Id*. at ¶ 2, Dkt. 14).

## LEGAL STANDARD

To survive a motion to dismiss for lack of subject matter jurisdiction under section 12(b)(1) of the Federal Rules of Civil Procedure, it is the plaintiff who bears the burden of proof. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (citations omitted); *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) ("In resolving the question of jurisdiction,…the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). The Court may go outside the pleadings to resolve disputed fact issues on a 12(b)(1) motion. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

## ARGUMENT

## POINT I

## ATTORNEY GENERAL JAMES IS NOT A PROPER PARTY TO THIS CASE

"The Eleventh Amendment bars suits in federal courts against states and state officials acting in their official capacities by their own citizens, citizens of another state, and foreign sovereigns." *Doe v. Annucci*, No. 14-CV-2953, 2015 WL 4393012, *15 (S.D.N.Y. July 15, 2015). The ability to sue state officers in their official capacities for an ongoing violation of federal law only applies where the state official sued "has some connection with the enforcement of the [allegedly unconstitutional] act." *Ex parte Young*, 209 U.S. 123, 157 (1908). The purpose of this requirement "is to prevent plaintiffs from suing state officials with broad executive powers as a means of circumventing the Eleventh Amendment." *Mulgrew v. U.S. Dep't of Transp.*, 750 F. Supp. 3d 171, 203 (S.D.N.Y. 2024). As such, a state official's mere general duty to enforce state law is insufficient to make them a proper party to an action. *See Goldstein v. Hochul*, 680 F. Supp. 3d 370, 384-85 (S.D.N.Y. 2023); *Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki,* 201 F.3d 430 (2d Cir. 1999) ("[T]he vast majority of courts to consider the issue have held—correctly, in my view—that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute").

Here, Plaintiffs claim that Attorney General James is an appropriate party as she "exercises, delegates, or supervises the power and duties of the New York State Department of Law, including the authority to enforce and defend New York's laws and regulations and to bring civil actions in the name of the State pursuant to New York Executive Law Section 63." (Dkt. No. 33, ¶ 13).

Though the Attorney General enforces the laws of the State, their "historical authority to instigate criminal proceedings has over time been transferred to county district attorneys. As a result, the Attorney General now has no power to prosecute crimes unless specifically permitted by law." *People v. Cuttita*, 7 N.Y.3d 500, 507, 858 N.E.2d 318 (2006). One such designation, New York Executive Law ("N.Y. Exec. Law") § 63(2), outlines the general duty of the attorney general to prosecute any actions required by the governor. Plaintiffs root their claims against Attorney General James in this subsection. (*See* Dkt. No. 33, ¶ 13). However, as discussed below, they ultimately fail to plead facts showing that she has any connection with the Times Square Law sufficient to implicate the *Ex parte Young* exception to Eleventh Amendment state immunity.

Courts in this District have expressly held that the Attorney General is not a proper party to actions challenging other subsections of the sensitive locations law. In *Goldstein v. Hochul*, the plaintiffs challenged the constitutionality of New York Penal Law § 265.01-e(2)(c), which designates places of worship as sensitive locations, claiming it violated their rights under the First, Second, and Fourteenth Amendments. 680 F. Supp. 3d at 379, 383. Attorney General James was also a defendant in that action. Similar to Plaintiffs' contention here, the plaintiffs in *Goldstein* alleged that Attorney General James was a proper defendant because she "is responsible for the enforcement of laws and prosecution of crimes throughout the state." *Id*. at 385 (internal quotations omitted). The Court flatly rejected this position, however, finding that Attorney General James did not "have sufficient enough connection with the enforcement of the [N.Y. Penal Law § 265.01-e(2)(c)]." *Id*. As such, the Court dismissed Attorney General James from the action, reasoning that "the Attorney General's general duty to enforce the laws is not sufficient to make her a proper party in a suit challenging a state statute." *Id*.; *see also Ulrich v. Mane*, 383 F. Supp. 2d 405, 410

(E.D.N.Y. 2005) ("While the Attorney General is charged with defending the constitutionality of state law, this fact alone does not provide a basis for bringing an action against [her].").

The rationale behind the Court's decision in *Goldstein* plainly extends to the instant action. Just as in *Goldsten*, Plaintiffs allege, in essence, that Attorney General James is a proper party due to her general duty to enforce New York laws. (*See* Dkt. No. 33, ¶ 13). However, Plaintiffs fail to plead with any specificity how this creates a nexus with the actual enforcement of the Times Square Law sufficient to circumvent the Eleventh Amendment. Rather than plead how Attorney General James has a specific duty to enforce the Times Square Law, Plaintiffs Palma or Goldberger merely group Attorney General James with the other Defendants in asserting their fear of enforcement. (*Id*. at ¶¶ 35, 38, 43). Yet Plaintiffs have utterly failed to allege that Attorney General James, specifically, has enforced or intends to enforce the challenged statute. *See, e.g.*, *Goldstein*, 680 F. Supp. 3d at 385; *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 295 (W.D.N.Y. 2010), *aff'd*, 448 F. App'x 79 (2d Cir. 2011) ("the Attorney General's general authority to investigate and enforce the laws of New York State pursuant to Executive Law § 63(12) is not a sufficient connection to support an exception to sovereign immunity under *Ex parte Young* for the Attorney General to be a proper party…."); *Chrysafis v. James*, 534 F. Supp. 3d 272, 292 (E.D.N.Y. 2021) ("the Attorney General's discretionary authority to seek enforcement against "illegal acts" under Executive Law § 63(12) does not bestow a particular duty upon her to enforce [the challenged law] sufficient to invoke the *Ex parte Young* exception to sovereign immunity.").

Furthermore, Plaintiffs' reliance on N.Y. Exec. Law § 63(2) is of no moment as the statute is inherently discretionary. The statute does not impose upon Attorney General James a duty to prosecute all criminal actions, but only those required by the governor. As this does not constitute a particular duty on the part of the governor, neither does it create a particular duty on Attorney

General James. *See Gazzola v. Hochul*, No. 22-CV-1134, 2025 WL 2771835, *10 (N.D.N.Y. Sept. 26, 2025), *appeal docketed*, 25-2715 (2d Cir. Oct. 28, 2025) (the governor's authority to "require the State Attorney General to investigate and prosecute unlawful acts…are [] insufficient to allow an inference of a particularized duty to enforce the firearms law in question.").

Accordingly, Attorney General James is shielded by Eleventh Amendment immunity and the claims against her should be dismissed.

**POINT II**

**PLAINTIFFS LACK STANDING TO SUE**

Standing is "the threshold question in every federal case." *Warth v. Sedin*, 422 U.S. 490, 498 (1975). This doctrine mandates that a plaintiff has a personal stake in the outcome of the litigation, ensuring that federal courts hear real controversies, and not generalized grievances about government. *See Gill v. Whitford*, 585 U.S. 48, 65 (2018). In order to have standing in federal court, a plaintiff must show (1) injury in fact, which is a "concrete and particularized" harm to a "legally protected interest"; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Failure of a party to meet any of these three elements necessitates dismissal. *See id*. at 561.

For the reasons discussed below, Plaintiffs lack standing to bring the instant action.

**A. <u>FPC Lacks Standing</u>**

Representational, or associational, standing permits organizations to initiate an action on behalf of its members when

> (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3)

> neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members.

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 333 (1977). Here, FPC claims that its inclusion as a named plaintiff serves to protect interests "germane to the organization's purposes, and, therefore, FPC sues on behalf of its members, including Plaintiffs Goldberger and Palma herein." (Dkt. No. 33, ¶ 10). FPC makes no claim of having suffered an injury in its own right. (*See id.*). Thus, despite FPC's purported claims, it lacks standing as a matter of law.

It has been well-settled in this Circuit for over 50 years that, "an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as [this Circuit] has interpret[ed] the rights [§ 1983] secures to be personal to those purportedly injured." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (internal quotations omitted). In *Aguayo v. Richardson*, the Second Circuit held that, "[n]either the language nor the history…[of 42 U.S.C. § 1983] suggests that an organization may sue under the Civil Rights Act for the violation of rights of its members." 473 F.2d 1090, 1099 (2d Cir. 1973). The Second Circuit reaffirmed this principle over ten years later in *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Sup'rs*, 737 F.2d 155 (2d Cir. 1984), and again nearly 30 years thereafter in the *Nnebe* decision.

Although FPC acknowledges the holding in *Nnebe*, it claims that the Second Circuit precedent is "erroneous, particularly in light of *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023).'" (Dkt. No. 33, ¶ 11). This assertion, however, is misguided, as *Students for Fair Admissions, Inc.* was not brought pursuant to Section 1983.[1] Plaintiff also improperly cites to two cases to claim that "there is a second line of Second Circuit

[1] Even if *Students for Fair Admissions, Inc.* was relevant to the instant action—which it is not—it would nevertheless be inappropriate for this Court to depart from Second Circuit precedent, such as *Nebe*. District Courts must follow binding Circuit precedent "unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Rivers*, No. 24-CR-6154, 2025 WL 1006338, *1 (W.D.N.Y. Apr. 4, 2025) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015)) (internal quotations omitted).

precedent reciting the Supreme Court doctrine that representational standing is available in Section 1983 cases." (*Id.*). The first of these cases, *Irish Lesbian & Gay Org. v. Giuliani*, is inapposite as the organizational plaintiff sued on its own behalf rather than on behalf of its members. 143 F.3d 638, 650 (2d Cir. 1998). The second of these cases, *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*, 98 F.4th 386 (2d Cir. 2024), like *Students for Fair Admissions, Inc.*, does not address an organizational plaintiff's standing to assert a Section 1983 claim, and is, therefore, inapplicable.

In contrast to FPC's claims, there have been several recent decisions on both the circuit and district levels that have directly endorsed the long-standing principle that organizational plaintiffs lack standing to bring Section 1983 claims on behalf of their members. *See, e.g.*, *A.H. by E.H. v. N.Y. State Dep't of Health*, 147 F.4th 270, 277, n.2 (2d Cir. 2025), *cert. denied sub nom. Disability Rts. N.Y. v. N.Y. State Dep't of Health*, 224 L. Ed. 2d 176 (Mar. 9, 2026) ("[I]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983.") (internal quotations omitted); *Hulinsky v. Cnty. of Westchester*, 670 F. Supp. 3d 100, 110 (S.D.N.Y. 2023), *aff'd sub nom. 40 Days for Life v. Cnty. of Westchester*, No. 23-804-CV, 2024 WL 2813930 (2d Cir. June 3, 2024) ("It has long been the law in the Second Circuit, with respect to associational standing, that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983.") (internal quotations omitted); *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 497 (S.D.N.Y. 2020) (the National Press Photographers Association "cannot assert on behalf of its members any claim under § 1983"); *Massapequa Union Free Sch. Dist. v. N.Y. State Bd. of Regents*, 809 F. Supp. 3d 33, 79 (E.D.N.Y. 2025), *appeal docketed*, 25-3151 (2d Cir. Dec. 15, 2025) ("[I]t is the law of this Circuit

that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983.") (internal quotations omitted).

The Second Circuit has even applied this principle to non-profit organizations in Second Amendment litigation. In *Conn. Citizens Def. League, Inc. v. Lamont*, the Connecticut Citizens Defense Leage, Inc. ("CCDL"), "a non-profit that seeks to protect Second Amendment Rights," brought a Section 1983 action seeking repeal of an executive order related to firearm regulation. 6 F.4th 439, 443 (2d Cir. 2021). First, the Second Circuit reiterated its holding in *Nnebe*, finding that "[b]ecause CCDL brought this case under 42 U.S.C. § 1983, it lacked standing to assert the rights of its members." *Id*. at 447 (quoting *Nnebe*, 644 F.3d at 156) (internal quotations omitted). Second, it reversed the district court's finding that CCDL had standing based on its own purported injury-in-fact. *Id*. Specifically, the Second Circuit held that actions such as lobbying and litigation were not departures from CCDL's usual activities, and, therefore, did not suffer independent injury sufficient to invoke standing. *Id*.

Finally, FPC has not cured its lack of representational standing, as found by the Second Circuit in *Antonyuk v. Chiumento*, a similar Section 1983 action challenging the constitutionality of, in relevant part, New York's sensitive locations restrictions. 89 F.4th 271, 344 (2d Cir. 2023). In *Antonyuk*, FPC, along with the Second Amendment Foundation, "premised their representational standing solely on the two named plaintiffs, without adding supporting declarations from other members." *Id*. The Second Circuit held that this was fatal to their representational standing. *Id*.[2] FPC has committed the same error in the instant action, thus warranting the same outcome.

[2] *Antonyuk* consisted of four separate cases decided in tandem. One of these appealed cases was *Hardaway v. Nigrelli*, 639 F. Supp. 3d 422, n. 4 (W.D.N.Y. 2022), through which the Second Circuit affirmed FPC's lack of representational standing. Only the plaintiffs in the *Antonyuk* case itself, which did not involve FPC, appealed the Second Circuit's decision. The Supreme Court granted certiorari and vacated judgment in light of its ruling in *United States v. Rahimi*,

In summary, the consistent and plainly articulated holdings of courts in this circuit firmly establish that the issue of representational standing is squarely settled against FPC. Therefore, FPC's claims must be dismissed against the State Defendants.

**B. <u>Plaintiffs Palma and Goldberger Lack Standing to Sue Attorney General James</u>**

While not suffering the same fatal standing infirmities as FPC, Plaintiffs Palma and Goldberger also lack standing to sue Attorney General James because they fail to link their alleged injuries to any specific action or conduct by her. Plaintiffs Palma and Goldberger assert a pre-enforcement challenge to the Times Square Law. As such, to satisfy the element of causation, Plaintiffs Palma and Goldberger must establish a "substantial likelihood of the alleged causality." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 104 (2d Cir. 2018) (quoting *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 113 (D.C. Cir. 1990)) (internal quotations omitted). However, even affording their pleadings every favorable inference, Plaintiffs fail to establish such a causality.

As argued, *supra*, a general duty to enforce the law, by itself, is insufficient for liability to attach. Nor do the provisions of N.Y. Exec. Law § 63(2) provide a pathway for standing. That the governor could, at her discretion, require Attorney General James to prosecute a violation of the Times Square Law does not create a *specific duty* to do so. *See Goldstein*, 680 F. Supp. 3d at 385. Rather, it renders any allegation that Attorney General James will enforce the law against any Plaintiff entirely speculative. Plaintiffs Palma and Goldberger have failed to even suggest that, should they violate the Times Square Law, there is a "substantial likelihood" that Attorney General

---

602 U.S. 680 (2024). *Rahimi* did not address the issue of representational standing. *See Rahimi*, 602 U.S. 680. Moreover, upon remand, the issues before the Second Circuit concerned neither FPC nor representational standing. *See Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900, 221 L. Ed. 2d 646 (2025). In short, the Second Circuit's holding regarding FPC's standing in *Hardaway* was not disturbed by *Antonyuk*'s subsequent procedural history and remains good law. *Id*. at n. 3 ("*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023), remains binding on the parties in [*Hardaway, Christian, and Spencer*]…and our discussion of those issues remains good law in the Circuit.").

James will either, on her own initiative, or at the direction of the governor, assume the prosecution. (*See* Dkt. No. 33). Instead, the reasonable presumption is that any violation of the Times Square Law will be prosecuted by the New York County District Attorney. Any claim as to the likelihood that Attorney General James would usurp that duty is entirely baseless and patently insufficient to establish the element of causation.

In light of the above, Plaintiffs Palma and Goldberger's alleged injuries are not traceable to the challenged action of Attorney General James. *Lujan*, 504 U.S. at 560-61. Their flimsy apprehension of prosecution by Attorney General James is, at best, "conjectural or hypothetical," not "actual or imminent." *See id*. at 560 (internal quotations omitted). They, therefore, lack standing to sue the Attorney General. As a result, Plaintiffs Palma and Goldberger's claims against Attorney General James must be dismissed.

**CONCLUSION**

For the reasons set forth above, State Defendants' motion to dismiss should be granted in its entirety. As such, all claims asserted by FPC should be dismissed against all Defendants, and all claims against Attorney General James should be dismissed.

Dated: New York, New York
August 3, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*

By:
/s/ *Daniel Luedtke*
Daniel Luedtke
Assistant Attorney General
28 Liberty Street - 18th Floor
New York, NY 10005
(212) 416-8213
daniel.luedtke@ag.ny.gov

**CERTIFICATION UNDER LOCAL CIVIL RULE 7.1**

According to Microsoft Word, and in compliance with Local Civil Rule 7.1(c), I certify that this Memorandum of Law contains 3,935 words.

Dated: New York, New York
August 3, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*

By:
*/s/ Daniel Luedtke*
Daniel Luedtke
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8213
daniel.luedtke@ag.ny.gov