**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

YEHUDA GOLDBERGER, ANTHONY PALMA, and FIREARMS POLICY COALITION, INC.,

*Plaintiffs*,

v.

LETITIA JAMES, in her official capacity as Attorney General of New York; JESSICA TISCH, in her official capacity as New York City Police Commissioner; ALVIN BRAGG, in his official capacity as District Attorney for New York County; and STEVEN JAMES in his official capacity as Superintendent of the New York State Police,

*Defendants*.

Case No. 26-cv-2325 (NSR)

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**THE ATTORNEY GENERAL'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 1

ARGUMENT ........ 3

I. The Attorney General Is a Proper Defendant Under New York Executive Law § 63(2). ........ 3

II. FPC Is a Proper Plaintiff ........ 8

III. Plaintiffs Palma and Goldberger Have Standing to Sue the Attorney General. ........ 12

CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.H. by E.H. v. New York State Department of Health*,
147 F.4th 270 (2d Cir. 2025) .......... 10, 11

*Aguayo v. Richardson*,
473 F.2d 1090 (2d Cir. 1973) .......... 9, 11, 12

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) .......... 11

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
868 F.3d 104 (2d Cir. 2017) .......... 9

*Chrysafis v. James*,
534 F. Supp. 3d 272 (E.D.N.Y. 2021) .......... 5, 7

*Connecticut Citizens Defense League, Inc. v. Lamont*,
6 F.4th 439 (2d Cir. 2021) .......... 11

*Connecticut Citizens Defense League, Inc. v. Thody*,
No. 23-cv-724, 2024 WL 177707 (2d Cir. Jan. 17, 2024) .......... 11

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .......... 1

*Dobbs v. Vahey*,
No. 3:25-CV-00824, 2026 WL 295694 (D. Conn. Feb. 4, 2026) .......... 4

*Ex parte Young*,
209 U.S. 123 (1908) .......... 3, 4, 8, 11

*Gazzola v. Hochul*,
No. 1:22-cv-1134, 2025 WL 2771835 (N.D.N.Y. Sept. 26, 2025) .......... 5, 8

*Giambalvo v. Suffolk County*,
155 F.4th 163 (2d Cir. 2025) .......... 13

*Goldstein v. Hochul*,
680 F. Supp. 3d 370 (S.D.N.Y. 2023) .......... 4

*HealthNow New York, Inc. v. New York*,
739 F. Supp. 2d 286 (W.D.N.Y. 2010) .......... 5, 6

*HealthNow New York, Inc. v. New York*,
448 F. App’x 79 (2d Cir. 2011) .......... 5, 6

*Heeter v. James*,
No. 24-CV-623, 2024 WL 4729246 (W.D.N.Y. Nov. 8, 2024) .......... 12

*Hulinsky v. Cnty. of Westchester*,
670 F. Supp. 3d 100, 110 (S.D.N.Y 2023) .......... 10

*40 Days for Life v. Cnty. of Westchester*,
No. 23-804-CV, 2024 WL 2813930 (2d Cir. June 3, 2024) ............................................10

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977).........................................................................................8, 9

*Knife Rts., Inc. v. Vance*,
802 F.3d 377 (2d Cir. 2015) ..........................................................................11

*Kwong v. Bloomberg*,
723 F.3d 160 (2d Cir. 2013) ..........................................................................12

*League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*,
737 F.2d 155 (2d Cir. 1984) ............................................................................9

*Massapequa Union Free School District v. New York State Board of Regents*,
809 F. Supp. 3d 33 (E.D.N.Y. 2025) ..............................................................10

*McDonald v. City of Chicago*,
561 U.S. 742 (2010).............................................................................................1

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022).................................................................................................1

*Nnebe v. Daus*,
644 F.3d 147 (2d Cir. 2011) ............................................................................9

*People v. Di Falco*,
44 N.Y.2d 482 (N.Y. Ct. App. 1978)................................................................3

*Rodriguez v. Winski*,
444 F. Supp. 3d 488 (S.D.N.Y 2020)...............................................................10

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
600 U.S. 181 (2023).......................................................................................9, 10

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).........................................................................................12

*United States v. Rivers*,
No. 24-CR-6154, 2025 WL 1006338 (W.D.N.Y. Apr. 4, 2025)..........................................9

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
535 U.S. 635 (2002)...........................................................................................3

*Warth v. Seldin*,
422 U.S. 490 (1975)...........................................................................................8

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021).............................................................................................3

*Wolford v. Lopez*,
609 U.S. ___, 146 S. Ct. 2032 (2026)................................................................1

**Statutes**

N.Y.C. ADMIN. CODE
§ 10-315(a) ........................................................................................................1

N.Y. EXEC. LAW
§ 63(2) ........................................................................................................3, 8
§ 63(12) ........................................................................................................5

N.Y. PENAL LAW
§ 70.00(2)(e) ........................................................................................................2
§ 70.00(3)(b) ........................................................................................................2
§ 80.00(1) ........................................................................................................2
§ 265.01-e ........................................................................................................2
§ 265.01-e(2)(t) ........................................................................................................1

**Other Authorities**

*Attorney General James Successfully Defends New York's Laws Keeping Guns Out of Times Square and Public Transit*, OFF. OF THE N.Y. ATT'Y GEN. (Sept. 19, 2025), https://perma.cc/5ERE-R7B3 ........................................................................................................6

Average Daily Visitors, TIMES SQUARE ALLIANCE (July 2026), https://perma.cc/9CJ6-6VRR ......2

Compl., *Students for Fair Admissions, Inc. v. Univ. of N.C.*, No. 1:14-cv-954 (M.D.N.C. Nov. 17, 2014), Doc. 1 ........................................................................................................9

## INTRODUCTION

The Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). The right applies against the states through the Fourteenth Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010), and protects "the right of Americans to carry arms for self-defense as they go about their daily lives." *Wolford v. Lopez*, 609 U.S. ___, 146 S. Ct. 2032, 2041 (2026). Plaintiffs have brought this action alleging that New York's ban on the possession of firearms in Times Square violates their Second and Fourteenth Amendment protected rights and contravenes the "enduring American tradition permitting public carry." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 67 (2022).

To vindicate their rights, Plaintiffs have sued both state and local officials with authority to enforce the Times Square Ban, seeking declaratory and injunctive relief. One of those officials, New York State Attorney General Letitia James, has moved to dismiss on the grounds that she is not a proper party to the case and because Plaintiffs lack standing to assert their claims against her. *See* Mem. of Law in Supp. of State Defs.' Mot. to Dismiss, at 1 (Aug. 3, 2026) ("MTD"). Her motion should be denied for the reasons that follow. But critically, even if her motion is granted in full, this case is not over. Nothing in her motion suggests that the Individual Plaintiffs, Anthony Palma and Yehuda Goldberger, lack standing to bring their Second Amendment claims against any of the other Defendants, and the case must proceed at least against them.

## BACKGROUND

New York Penal Law § 265.01-e(2)(t) makes it a class E felony for a person to possess a firearm in "the area commonly known as Times Square." N.Y. PENAL LAW § 265.01-e(2)(t); *see also* N.Y.C. ADMIN. CODE § 10-315(a) (defining Times Square). That area, covering dozens of city

blocks in Midtown Manhattan, *see* Map of Times Square Gun Free Zone, Doc. 1-1 (Mar. 20, 2026), encompasses ordinary streets and sidewalks, park areas, hotels, residential buildings, and businesses, and is one of the busiest public locations in the nation, averaging 264,388 average daily pedestrian visitors in July 2026, *see* Average Daily Visitors, TIMES SQUARE ALLIANCE (July 2026), https://perma.cc/9CJ6-6VRR. Entering this arbitrarily defined area of Manhattan with a firearm, even as someone who is otherwise licensed to carry in New York City, is punishable by a fine of up to $5,000 or between one and four years of imprisonment. N.Y. PENAL LAW §§ 70.00(2)(e), (3)(b), 80.00(1), 265.01-e.

The Times Square Ban was enacted on July 1, 2022, just eight days after the United States Supreme Court invalidated New York's unconstitutional carry licensing scheme in *Bruen*. Before *Bruen*, New York did not designate Times Square as a distinct "sensitive location" subject to carry restrictions different from those applicable elsewhere in New York City. Am. Compl., Doc. 35 ⁋ 32 (May 19, 2026) ("Am. Compl.").

Plaintiff Goldberger is a Rockland County resident licensed to carry a concealed handgun in New York City. *Id.* ¶¶ 8, 34. His work as an executive assistant takes him through Times Square, and he visits the area several times a year. *Id.* ¶ 35. He would carry there for self-defense but for Defendants' enforcement of the Times Square Ban. *Id.* Instead, he must disarm whenever his day might take him through the designated area. *Id.* Plaintiff Palma is an Orange County resident licensed to carry in New York state. Plaintiff Palma drives through the designated area multiple times per month to visit family. *Id.* ¶¶ 36, 38. Plaintiff Palma is not currently licensed to carry a firearm in New York City, but if it were not for the Times Square Ban, he would apply for such a license and carry pursuant to it—he regularly carries his firearm for self-defense in his day-to-day life. *Id.* ¶¶ 36–37. Goldberger and Palma are joined in this suit by Plaintiff Firearms Policy

Coalition, a nonprofit membership organization that seeks to promote and defend the Second Amendment-protected rights of its members. *Id.* ¶ 10. FPC has members in New York, including Plaintiffs Goldberger and Palma. *Id.*

Plaintiffs seek a declaration that the Times Square Ban is unconstitutional under the Second and Fourteenth Amendments and an injunction against its enforcement. *Id.* at Prayer for Relief ¶¶ 1–2. To ensure the injunctive relief is effective, Plaintiffs have sued the Attorney General and Superintendent James, who enforce the Times Square Ban at the statewide level, as well as local enforcement officials.

## ARGUMENT

### I. The Attorney General Is a Proper Defendant Under New York Executive Law § 63(2).

Although the Eleventh Amendment generally bars suits against states where they have not waived their sovereign immunity, it is no impediment to a suit like this one, where the plaintiff sues state enforcement officials in their official capacity, "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). A state official is an appropriate defendant when she has "some connection" to the enforcement of a challenged statute. *Ex parte Young* 209 U.S. 123, 157 (1908). This requirement is satisfied when a state official "may or must take enforcement actions" against the plaintiff. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 45 (2021). The Attorney General satisfies that standard in this case. New York Executive Law § 63(2) confers on the Attorney General, "[w]henever required by the governor[,]" a duty to "exercise all the powers and perform all the duties . . . which the district attorney would otherwise be authorized or required to exercise or perform." N.Y. EXEC. LAW § 63(2). One such duty is the "prosecution[] for crimes and offenses." *People v. Di Falco*, 44 N.Y.2d 482, 486 (N.Y. Ct. App. 1978). Should the Governor require, the

Attorney General has a specific duty to enforce the Times Square Ban. That the duty is conditional does not take it outside the scope of *Ex parte Young*, which does not demand that an official "possess unilateral authority to enforce remedial changes to the law," only " 'some connection with the enforcement' of the challenged [law]." *Dobbs v. Vahey*, No. 3:25-CV-00824, 2026 WL 295694, at *5 (D. Conn. Feb. 4, 2026) (quoting *Ex parte Young*, 209 U.S. at 157–58). Here, *Ex parte Young* is satisfied because an injunction could run against the Attorney General, who could be enjoined from enforcing the Times Square Ban pursuant to her Section 63(2) power at the Governor's request. If, on the other hand, the Attorney General is not enjoined, there is a risk that an injunction against the remaining parties would not grant Plaintiffs complete relief. If District Attorney Bragg is enjoined from enforcing the Times Square Ban, Section 63(2) provides an avenue for the Attorney General to simply enforce it in his stead. If Plaintiffs are right that the Times Square Ban is unconstitutional, that avenue needs to be closed.

The Attorney General nevertheless argues that she is not an appropriate defendant in a Second Amendment challenge to a firearms restriction under this Court's and the Second Circuit's precedent. *See* MTD at 4–7. She first cites *Goldstein v. Hochul*, 680 F. Supp. 3d 370 (S.D.N.Y. 2023), for this proposition. But in *Goldstein*, the court did not hold that the Attorney General would never be an appropriate defendant in a Second Amendment challenge to a firearms regulation. Rather, *Goldstein* merely concluded that the Attorney General's "general duty to execute the laws," was insufficient to make her a proper defendant in that case. 680 F. Supp. 3d at 384–85. Contrary to the Attorney General's assertion, *see* MTD at 6, that is *not* the basis on which Plaintiffs are proceeding here. Section 63(2) gives the Attorney General a *specific* enforcement duty in a case like this one when requested by the Governor. *Goldstein* did not discuss Section 63(2) and does not require rejecting it as a basis for the Attorney General being a defendant to this case. *Id.*

The Attorney General also cites *Chrysafis v. James*, 534 F. Supp. 3d 272 (E.D.N.Y. 2021), *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286 (W.D.N.Y. 2010), *aff'd*, 448 F. App'x 79 (2d Cir. 2011) (summary order), and *Gazzola v. Hochul*, No. 1:22-cv-1134, 2025 WL 2771835 (N.D.N.Y. Sept. 26, 2025), to buttress her argument, *see* MTD at 6–7, but none of these cases support dismissal on these facts. Begin with *HealthNow*. In that case, the plaintiff health services company brought a suit to establish that New York's Anti-Subrogation Law, which established a conclusive presumption that any settlement in an action for personal injury "does not include any compensation for the cost of health care services . . . to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider." 739 F. Supp. 2d at 290–91 (citation omitted). The plaintiff stood to lose nearly $14 million in claims it could not enforce under this law, which it argued was preempted by ERISA, should not be read to apply to "equitable subrogation rights," or violated the Due Process and Contracts clauses of the Constitution. *Id.* at 291. To establish these points, the plaintiff health services company sued New York's Attorney General and argued that under *Ex parte Young* the Attorney General had "the requisite connection to the Anti-Subrogation Law through his general investigative and discretionary enforcement authority pursuant to New York State Executive Law § 63(12)." *Id.* at 293. Section 63(12) provides, in part, that "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the . . . transaction of business, the attorney general may apply . . . for an order enjoining the continuance of such business activity" and seek restitution and damages as appropriate. N.Y. EXEC. LAW § 63(12). *HealthNow* rejected the argument that this provision gave the Attorney General "some connection" to the challenged law under *Ex parte Young*. It held that the Attorney General was "nowhere tasked with the enforcement of the Anti-Subrogation Law," including in Section 63(12) which merely provided a "general

authority to investigate and enforce the laws of New York." 739 F. Supp. 2d at 295. In reaching that conclusion the specific nature of the complained-of Anti-Subrogation Act was crucial. Unlike cases where the challenged statutes "assign an affirmative obligation to Plaintiff that it fails or refuses to comply with" and thereby risks legal enforcement, the Anti-Subrogation Act operated not through enforcement actions but simply by creating a legal presumption applicable in other cases. *See id.* at 296. There *was* no enforcement mechanism for which the Attorney General could be responsible. This case is quite different. Plaintiffs are challenging a criminal statute, which they do not want to comply with, and which is enforced by officials who are empowered by state law to bring criminal complaints against individuals who violate it. And under Section 63(2), which does not provide for a general authority to investigate and stop fraud but rather allows the Attorney General to step into the shoes of a district attorney, the Attorney General is one such official.

On appeal, the Second Circuit affirmed *HealthNow* in a summary order and its reasoning further demonstrates the differences between that case and this one, as it concluded that the plaintiff had "[]not establish[ed] that the Attorney General is threatening to use his section 63(12) authority against it," both because the Attorney General "denied his office intends to use section 63(12) against" the plaintiff *and* the plaintiff had "not alleg[ed] it would engage in any actions that would reasonably prompt the use of section 63(12)." *HealthNow*, 448 F. App'x at 81. Here, by contrast, the Attorney General has touted her defense of the Times Square Ban and her office's commitment to enforcing it. *See Attorney General James Successfully Defends New York's Laws Keeping Guns Out of Times Square and Public Transit*, OFF. OF THE N.Y. ATT'Y GEN. (Sept. 19, 2025), https://perma.cc/5ERE-R7B3. Nowhere in her motion to dismiss does she suggest she would not exercise her authority under Section 63(2) should the opportunity arise. And Plaintiffs have alleged a desire to undertake a course of conduct—by carrying firearms in Times Square—

that make it likely the opportunity *would* arise, especially if the other Defendants were enjoined from enforcing the law and the Attorney General was, in effect, the prosecutor of last resort under Section 63(2).

In *Chrysafis*, the district court dismissed claims against the Attorney General on the grounds that she was not charged with a specific duty to enforce the New York COVID-19 Emergency Eviction and Foreclosure Prevention Act, which like the Anti-Subrogation Act in *HealthNow*, was not a criminal statute with an ordinary criminal enforcement mechanism, but rather implemented an eviction moratorium by (among other things) requiring courts handling eviction proceedings to stay them and by nullifying existing warrants for evictions. *See Chrysafis*, 534 F. Supp. 3d at 279–80. The plaintiffs, residential property owners who, like the health services company in *HealthNow*, found themselves financially harmed by the eviction moratorium, sued the Attorney General and argued that even though the challenged provision was effectively self-operating, she had enforcement authority through by New York Executive Law §§ 63(1), 63(12), or 71. *Id.* at 291. Section 63(12) was, of course, the same provision as was at issue in *HealthNow* and given the similarities of the cases, the court relied on *HealthNow* to reject Section 63(12) as a basis for making the Attorney General a defendant. *Id.* at 292. Sections 63(1) and 71 were no better. Those provisions merely authorize the Attorney General to defend a challenged statute in court, but courts have long drawn a distinction between the Attorney General's duty to defend state laws against constitutional challenges, and an enforcement duty related to the challenged statute. *Id.* at 291–92 (collecting cases). But here, as explained above, Plaintiffs have not sought to include the Attorney General just because she is empowered to defend the statute, but so that they may get complete relief and she can be enjoined from exercising her authority under Section 63(2).

Finally, *Gazzola* did address Section 63(2), and held that it was an insufficient basis for making the Governor a party to a challenge to a challenge to some restrictions that the plaintiffs argued violated the Second Amendment. *See* 2025 WL 2771835, at *10. It reasoned that, although Section 63(2) gave the governor the *power* to "require the State Attorney General to investigate and prosecute unlawful acts, including matters under the New York State Police or the Department of Criminal Justice Services' responsibility," it did not establish that she actually had a duty to enforce those laws. *Id. Gazzola*, of course, is not binding on this Court, and its outcome seems hard to square with a rule that requires a defendant only to have "some connection" to the enforcement of a challenged law. *See Ex parte Young* 209 U.S. at 157. But in any event, *Gazzola* did not address the role of the Attorney General (who was also a defendant to that suit), and her role is different under the statute than the Governor's. While the Governor has the *option* to direct the Attorney General to enforce a criminal law, the Attorney General, once directed, is "required" to do so. *See Gazzola*, 2025 WL 2771835, at *10; *see also* N.Y. EXEC. LAW § 63(2). In order to prevent her from carrying out her duty in such a situation against the Plaintiffs in this case, she must be a party to any injunctive order issued by this Court.

## II. FPC Is a Proper Plaintiff.

The Supreme Court has long held that an organization can assert "standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). To invoke associational standing, a plaintiff organization must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S.

333, 343 (1977). FPC undoubtedly fulfills these three criteria, and there can be no dispute that FPC therefore satisfies Article III's standing requirements to sue on behalf of its members in this case.

Because FPC has Article III standing, the question is whether there is some other impediment to FPC's role as a plaintiff in this case. The Attorney General relies on a line of Second Circuit decisions holding, contrary to the holdings of every other circuit to address the issue, that an association cannot bring a Section 1983 cause of action on behalf of its members. *See Aguayo v. Richardson*, 473 F.2d 1090, 1099–1100 (2d Cir. 1973); *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160–61 (2d Cir. 1984); *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *see also Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 123 & n.6 (2d Cir. 2017) (Jacobs, J., dissenting) (collecting cases from other circuits). The Attorney General argues that this line of precedent bars FPC's claims. *See* MTD at 7–11. She is wrong for two independent reasons.

First, although this Court ordinarily is bound to follow Second Circuit precedent, that is not the case where "a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Rivers*, No. 24-CR-6154, 2025 WL 1006338, at *1 (W.D.N.Y. Apr. 4, 2025) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015)). The Supreme Court's recent decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*"), did just that. In *SFFA*, as relevant here, an associational plaintiff brought Section 1983 claims on behalf of its members alleging that the University of North Carolina's race-based admissions programs violated the Fourteenth Amendment's equal protection clause and federal non-discrimination laws. *See* Compl., at 56–63 (counts), *Students for Fair Admissions, Inc. v. Univ. of N.C.*, No. 1:14-cv-954 (M.D.N.C. Nov. 17, 2014), Doc. 1. UNC challenged SFFA's associational standing and the

Supreme Court, applying the same *Hunt* test laid out above, held that SFFA could litigate the case on behalf of its members. *SFFA*, 600 U.S. at 200–01. The Supreme Court's considered decision that SFFA could proceed on behalf of its members makes the Second Circuit's precedent no longer tenable.

The Attorney General responds by pointing out that "there have been several recent decisions on both the circuit and district levels that have directly endorsed the long-standing principle that organizational plaintiffs lack standing to bring Section 1983 claims on behalf of their members." *See* MTD at 9 (citations omitted). Beginning with the district court cites, two of the three cases predate *SFFA*, so they are irrelevant. *See Hulinsky v. Cnty. of Westchester*, 670 F. Supp. 3d 100, 110 (S.D.N.Y 2023), *aff'd sub nom.*, *40 Days for Life v. Cnty. of Westchester*, No. 23-804-CV, 2024 WL 2813930 (2d Cir. June 3, 2024); *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 497 (S.D.N.Y 2020). The third, *Massapequa Union Free School District v. New York State Board of Regents*, cites to *SFFA* for the principle that associations can have Article III standing on behalf of their members*, see* 809 F. Supp. 3d 33, 68 (E.D.N.Y. 2025), but does not discuss that case at all or consider whether it undermines circuit precedent when it later concludes that such an organization's claims cannot be brought under Section 1983, so it has no persuasive value either, *id.* at 79. The Second Circuit precedent is no better. The Attorney General quotes *A.H. by E.H. v. New York State Department of Health* for the principle that "it is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." 147 F.4th 270, 277 n.2 (2d Cir. 2025) (clean up, citation omitted). But that does not demonstrate that the Second Circuit has rejected the argument that *SFFA* requires a change. To the contrary, the statement was dicta, because the association there had "expressly disclaim[ed] reliance on associational standing," let alone asserted that *SFFA* abrogated circuit precedent. *See*

*id.* at 277. The second case, *Connecticut Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439 (2d Cir. 2021), predates *SFFA* and so is irrelevant. Indeed, another case brought by the same group, *Connecticut Citizens Defense League, Inc. v. Thody*, No. 23-cv-724, 2024 WL 177707 (2d Cir. Jan. 17, 2024), is a better point of reference. There, the Second Circuit expressly declined to consider whether *SFFA* abrogated its rules on associational standing in Section 1983 cases because the organization's claim for injunctive relief was moot, strongly indicating the issue remains an open question in the Second Circuit. *See id.* at *3 n.3. In this case, the claim for injunctive relief brought by plaintiffs is in no way moot and the Court should conclude that *SFFA* requires rejecting the Second Circuit's aberrational approach to Section 1983 standing.

Second, FPC can sue on behalf of its members in equity without relying on Section 1983. That means that even if FPC cannot assert a Section 1983 cause of action on behalf of its members, it still is a proper plaintiff in this case. The Supreme Court has held that the standing to enjoin unconstitutional acts by state officials is not restricted to claims under Section 1983: "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). *Ex parte Young* was itself a suit in equity; the case began as a shareholders' bill in equity in the Circuit Court for the District of Minnesota. *See* 209 U.S. at 129. No statutory cause of action was invoked, and none was needed. Indeed, because Section 1983's coverage is limited to state officials, equitable suits to enjoin federal officials from enforcing unconstitutional statutes generally proceed directly under the constitution in *Ex-parte-Young*-type actions. The Second Circuit's objection to associational bringing claims on behalf of their members is exclusive to the Section 1983 context and based on the statutory text. *See Knife Rts., Inc. v. Vance*, 802 F.3d 377, 388 n.9 (2d Cir. 2015); *see also*

*Aguayo*, 473 F.2d at 1099. It therefore poses no impediment to FPC suing directly under *Ex parte Young*, as it has done here. *See* Am. Compl. ¶ 12 & p. 13.

Finally, as discussed below, Plaintiffs Palma and Goldberger have causes of action that are in no way affected by the Second Circuit's outlier approach to Section 1983 cases. That leaves this Court with another option—to simply not address these arguments from the Attorney General at this stage. The Second Circuit itself has done the same, concluding in *Kwong v. Bloomberg* that, "because we are persuaded that the individual plaintiffs have standing, we need not address the standing arguments . . . regarding the two organizational plaintiffs." 723 F.3d 160, 162 n.4 (2d Cir. 2013) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263–64 (1977)). A district court in this circuit recently cited *Kwong* when declining to address a similar question about FPC's associational standing under Section 1983. *Heeter v. James*, No. 24-CV-623, 2024 WL 4729246, at *5 (W.D.N.Y. Nov. 8, 2024).

## III. Plaintiffs Palma and Goldberger Have Standing to Sue the Attorney General.

The Attorney General's argument that Plaintiffs Palma and Goldberger lack standing is entirely redundant of her argument that she is not an appropriate defendant under *Ex parte Young*. *See* MTD at 11–12. For the same reasons that she argues that she lacks "some connection" to the enforcement of the Times Square Ban, she argues that Plaintiffs have not established a "substantial likelihood of the alleged causality" that ties her to their injuries. *Id.* at 11 (quoting *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 104 (2d Cir. 2018)). In a pre-enforcement case like this one, plaintiffs have standing to sue a defendant when they have "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder" from that defendant. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (citation omitted). A

"credible threat of prosecution" is present here for the same reason that the Attorney General has "some connection" to the challenged law: because Section 63(2) gives her the authority to prosecute violations at the Governor's direction. Plaintiffs clear this "low threshold" because the Times Square Ban is a recent enactment, which the Attorney General supports, and she has not disavowed an intention to enforce the law. *Giambalvo v. Suffolk County*, 155 F.4th 163, 185 (2d Cir. 2025) (listing factors considered to determine whether a threat of enforcement is credible) (citation omitted). The Attorney General has argued that it is speculative that she will get involved in any prosecution and that "the reasonable presumption is that any violation of the Times Square Law will be prosecuted by the New York County District Attorney." MTD at 12. That may well be true now—certainly the path to enforcement by the District Attorney is more straightforward—but if Plaintiffs succeed in this case and enjoin the District Attorney from enforcing the law, there would be nothing stopping the Attorney General from enforcing it in his stead if authorized by the Governor unless she too is enjoined. To ensure that relief to Plaintiffs is not illusory, the Attorney General should remain a defendant in this case.

**CONCLUSION**

The Court should deny the Attorney General's motion to dismiss.

Date: September 4, 2026

Respectfully submitted,

/s/ Peter A. Patterson
Peter A. Patterson*
William V. Bergstrom*
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

According to Microsoft Word, and in compliance with Local Civil Rule 7.1(c), I certify that this Opposition to Defendants' Motion to Dismiss contains 4,362 words.

*/s/ Peter A. Patterson*
Peter A. Patterson*

*Counsel for Plaintiffs*