UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YEHUDA GOLDBERGER, ANTHONY PALMA, and FIREARMS POLICY COALITION, INC.,

Plaintiffs,

- against -

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF NEW YORK, STEVEN G. JAMES, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF THE NEW YORK STATE POLICE, JESSICA TISCH, IN HER OFFICIAL CAPACITY AS NEW YORK CITY POLICE COMMISSIONER, and ALVIN BRAGG, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR NEW YORK COUNTY,

Defendants.

26-CV-2325 (NSR)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS**

LETITIA A. JAMES
Attorney General
State of New York
*Attorney for State Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8213

DANIEL LUEDTKE
Assistant Attorney General
*Of Counsel*

# Table of Contents

TABLE OF AUTHORITIES ... 1
PRELIMINARY STATEMENT ... 1
ARGUMENT ... 2
POINT I: PLAINTIFFS' ARGUMENTS ABOUT ATTORNEY GENERAL JAMES SHOULD BE REJECTED ... 2
POINT II: FPC STILL LACKS STANDING TO SUE ... 7
POINT III: PLAINTIFFS PALMA AND GOLDBERGER LACK STANDING ... 9
CONCLUSION ... 10

**Page(s)**

## Cases

*Aguayo v. Richardson*,
473 F.2d 1090 (2d Cir. 1973), 2025 WL 5281079 ....................1, 7

*Armstrong v. Exceptional Child Ctr., Inc.*
575 U.S. 320 (2015)....................8

*Baker v. McCollan*,
443 U.S. 137 (1979)....................8

*Barhold v. Rodriguez*,
863 F.2d 233 (2d Cir. 1988)....................2

*Chrysafis v. James*,
534 F. Supp. 3d 272 (E.D.N.Y. 2021) .................... 4-5

*Defending Educ. v. Croton-Harmon Union Free Sch. Dist.*,
No. 24-1900, 2025 WL 5281079 (2d Cir. Apr. 22, 2025) ....................1, 7, 9

*Ex parte Young*,
209 U.S. 123 (1908).................... 7-9

*Gazzola v. Hochul*,
No. 22-CV-1134, 2025 WL 2771835 (N.D.N.Y. Sept. 26, 2025).................... 2, 5-6

*Goldstein v. Hochul*,
680 F. Supp. 3d 370 (S.D.N.Y. 2023).................... 2-4

*HealthNow New York, Inc. v. New York*,
739 F. Supp. 2d 286 (W.D.N.Y. 2010) .................... 3-4, 6

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)....................7

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*,
894 F.3d 95 (2d Cir. 2018)....................10

*Rodriguez v. Winski*,
444 F. Supp. 3d 488 (S.D.N.Y. 2020)....................7

*Seminole Tribe of Fla. v. Fla.*,
517 U.S. 44 (1996)....................9

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)....................7

## Constitutions

Second amendment ....................................................................................................6

Eleventh Amendment.................................................................................... 2, 4-5, 7

## State Statutes

New York Executive Law
§ 63.......................................................................................................... 2-7
§ 71.............................................................................................................4

New York Penal Law
§ 265.01-e ........................................................................................... 2-7, 10

## Federal Statutes

42 U.S.C.
§ 1983.................................................................................................. 1, 7-9

## Rules

Fed. R. Civ. P.
§ 12(b)(1) ....................................................................................................1

## Miscellaneous Authorities

*Attorney General James Successfully Defends New York's Laws Keeping Guns Out of Times Square and Public Transit*, OFF. OF THE N.Y. ATT'Y GEN. (Sept. 19, 2025), https://perma.cc/5ERE-R7B3 .........................................................................4

**PRELIMINARY STATEMENT**

Defendants New York State Attorney General Letitia James ("Attorney General James") and New York State Police Superintendent Steven G. James ("Superintendent James") (collectively, "State Defendants"), respectfully submit this Reply Memorandum in further support of their motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) to dismiss all claims against Attorney General James, as well as Plaintiff Firearms Policy Coalition, Inc.'s ("FPC") claims against Superintendent James.

On September 4, 2026, Plaintiffs FPC, Anthony Palma, and Yehuda Goldberger (collectively, "Plaintiffs") served their Response in Opposition to the Attorney General's Motion to Dismiss ("Plaintiff's Opp."). Shortly before the State Defendants' Reply was due, the Second Circuit issued a decision—on reconsideration—which overruled the long-standing precedent within this Circuit that associational standing does not apply to actions commenced under 42 U.S.C. § 1983 ("Section 1983"). *Defending Educ. v. Croton-Harmon Union Free Sch. Dist.*, No. 24-1900, 2025 WL 5281079 (2d Cir. Apr. 22, 2025) ("*Defending Education*"). In *Defending Education*, the Circuit originally held that the organizational plaintiff lacked standing pursuant to *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973), 2025 WL 5281079. *Id*. at *2. However, on reconsideration, the Second Circuit overruled *Aguayo*'s bar to associational standing in Section 1983 actions, finding that organizational plaintiffs can maintain standing if "the organization can claim that it suffered an injury in its own right, or, second, it can assert 'standing solely as the representative of its members.'" *Id*. at *5 (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023)) (internal quotations omitted).

Without agreeing with the holding in *Defending Education*, State Defendants hereby withdraw their arguments premised on the *Aguayo* line of cases. However, this withdrawal is not

a concession that FPC possesses standing. *See Barhold v. Rodriguez*, 863 F.2d 233, 234 (2d Cir. 1988) ("insofar as standing is an article III requirement for jurisdiction, the parties do not have the power to confer such jurisdiction upon the Court by conceding the standing of certain plaintiffs.").

For the reasons discussed below, Plaintiffs' remaining arguments in opposition to the State Defendants' Motion to Dismiss should be rejected and the motion granted in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFFS' ARGUMENTS ABOUT ATTORNEY GENERAL JAMES SHOULD BE REJECTED

The prevailing inquiry in overcoming Eleventh Amendment immunity is not whether there *may* exist a scenario in which a state official *could potentially* enforce the contested statute, but rather whether said official has such a connection to enforcement that it constitutes a particular duty to take action. *See Gazzola v. Hochul*, No. 22-CV-1134, 2025 WL 2771835, *10 (N.D.N.Y. Sept. 26, 2025), *appeal docketed*, 25-2715 (2d Cir. Oct. 28, 2025). State Defendants explored how this standard has developed through various District and Circuit decisions in their Memorandum of Law. *See* State Defendants' Memorandum of Law ("MOL"), POINT I. Plaintiffs' opposition spends considerable time attempting to render inapposite this precedent, however, their arguments are wholly unpersuasive.

Beginning with *Goldstein v. Hochul*, 680 F. Supp. 3d 370 (S.D.N.Y. 2023), despite not directly citing Exec. Law § 63(2), the Southern District's reasoning plainly extends to the instant action. The plaintiffs in *Goldstein* challenged the constitutionality of New York Penal Law § 265.01-e(1), a provision of the Concealed Carry Improvement Act ("CCIA"), to which New York Penal Law § 265.01-e(2)(t) (the "Times Square Law") also belongs. *Goldstein*, 680 F. Supp. 3d at 380; (Dkt. No. 33). The plaintiffs sought to enjoin Attorney General James from enforcing the

subject criminal statute. The Court ultimately found that "the Attorney General's general duty to enforce the laws is not sufficient to make her a proper party in a suit challenging a state statute." *Id*. at 385. The Attorney General's enforcement duties are enumerated in Exec. Law § 63, entitled "General Duties." Each of the enforcement mechanisms articulated therein outline various means by which the Attorney General upholds the interests of the state. *See* Exec. Law § 63. One such mechanism is to prosecute crimes when called upon by the governor. *Id*. at § 63(2). This section plainly represents one of the Attorney General's general duties to enforce that the Southern District rejected as grounds for making them a proper party. *Goldstein*, 680 F. Supp. 3d at 380. That the Court does not specifically cite to Exec. Law § 63(2) does nothing to undermine this. *See id*.

Regarding Plaintiffs' attempt to distinguish *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286 (W.D.N.Y. 2010), *aff'd*, 448 F. App'x 79 (2d Cir. 2011), their entire argument misunderstands State Defendants' purpose in citing to it. Plaintiffs argue that *HealthNow* concerned the Attorney General's alleged lack of enforcement connection to New York's Anti-Subrogation Law, whereas Attorney General James possesses a statutorily-enumerated means of enforcing the Times Square Law. (Plaintiffs' Opp., 5-6). State Defendants did not cite *HealthNow* as a factual analogue, but rather as a source of the burden that plaintiffs must bear to establish that state officials possess a specific enforcement duty. *Id*. at 294. Specifically, the Court in *HealthNow* held that state officers must have "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty" in order to be a proper party. *Id*. at 294 (internal quotations omitted). This burden was echoed in *Goldstein*, where the Southern District found that the plaintiffs had "not shown that either Governor Hochul or Attorney General James have the specific legal duty to enforce the CCIA, that they have enforced the CCIA, or that they intend to enforce the CCIA against the Plaintiffs." *Goldstein*, 680 F. Supp. 3d at 385. In keeping with these

holdings, State Defendants note that Plaintiffs continue not to meet their burden in pleading either of these prongs with any specificity in the instant action.

Plaintiffs endeavor to remedy this pleading deficiency by juxtaposing the Second Circuit's summary order in *HealthNow* with a statement Attorney General James made on September 19, 2025. (*See* Plaintiffs' Opp., 6). Plaintiffs argue that Attorney General James' statement proves her office's "commitment to enforcing" the Times Square Law. (*Id*.). A plain reading of the quote, however, demonstrates that Attorney General James merely affirmed her office's intent to defend New York's gun laws, clearly referencing her successful defense in the matter of *Frey v. City of New York*. *See Attorney General James Successfully Defends New York's Laws Keeping Guns Out of Times Square and Public Transit*, OFF. OF THE N.Y. ATT'Y GEN. (Sept. 19, 2025), https://perma.cc/5ERE-R7B3. Defending the constitutionality of a statute in no way implies an intention to personally enforce it criminally, let alone suggest that the governor will direct her to do so. *See Chrysafis v. James*, 534 F. Supp. 3d 272, 291 (E.D.N.Y. 2021) (That the Attorney General is empowered and responsible for defending the constitutionality of a challenged act "does not demonstrate the requisite connection with enforcement of the statute" such that plaintiffs might overcome the Eleventh Amendment.). Without more, Plaintiffs' arguments do not satisfy the two-prong requirement established by cases like *HealthNow* and *Goldstein*.

Plaintiffs' claim that *Chrysafis* does not support dismissal is equally flawed. Though the plaintiffs in *Chrysafis* invoked Exec. Law §§ 63(1), 63(12), and 71 in asserting the Attorney General's connection to the enforcement of the challenged act, the most comparable statute is Exec. Law § 63(12). *See Chrysafis*, 534 F. Supp. 3d at 291. The Court in *Chrysafis* acknowledged that Exec. Law § 63(12) allowed the Attorney General "to pursue claims against those who engage in repeated and persistent violations of" the challenged act, but held that it did not "create a

particular duty to enforce [the challenged act] *itself* that would make the Attorney General the appropriate state defendant for a pre-enforcement lawsuit…." *Id.* at 292 (emphasis added). That *Chrysafis* concerned an eviction moratorium rather than a criminal statute is of no moment because the underlying enforcement potential is analogous to the instant matter. Both Exec. Law §§ 63(2) and (12) permit the Attorney General (as a general matter) to enforce the laws of the state against offending parties. Moreover, as in *Chrysafis*, Plaintiffs are claiming that a broader enforcement authority creates a specific duty to enforce a particular law. (Plaintiffs' Opp., 4). Similar to *Chrysafis*, that the Attorney General could—hypothetically—be called upon to prosecute certain criminal matters does not create a particular duty to enforce the Times Square Law itself. *See* 534 F. Supp. 3d at 292. If anything, the Attorney General's enforcement duty under Exec. Law § 63(2) is more attenuated than Exec. Law § 63(12) as the former broadly encompasses any and all prosecutions in the supreme court, whereas the latter specifically encompasses enforcement action against those engaging in "repeated fraudulent or illegal acts or otherwise demonstrate[ing] persistent fraud or illegality in the carrying on, conducting or transaction of business." Additionally, whereas the authority vested by Exec. Law § 63(12) is inherent in the Attorney General herself, Exec. Law § 63(2) requires gubernatorial action. In short, the similarities between *Chrysafis* and the instant matter should govern over any superficial differences, while the meaningful distinctions only further support Attorney General James' entitlement to Eleventh Amendment immunity. Therefore, the Court should disregard Plaintiffs' opposition as it pertains to *Chrysafis*.

Finally, Plaintiffs make a misguided attempt to distinguish *Gazzola v. Hochul*, No. 22-cv-1134, 2025 WL 2771835 (N.D.N.Y. Sept. 26, 2025). Indeed, Plaintiffs concede that the Court in *Gazzola* found that Exec. Law § 63(2) "was an insufficient basis for making the Governor a party

to a challenge to a challenge (sic) to some restrictions that the plaintiffs argued violated the second amendment." (Plaintiffs' Opp., 8). Plaintiffs appear to recognize the significance of *Gazzola*'s relation to this case, as they fall back on meritless arguments in an attempt to convince this Court to disregard it. First, *Gazzola* did not address the role of Attorney General James because she did not move on the grounds that she was an improper party in that case. *Id*. at 12; *see Gazzola*, 2025 WL 2771835, Dkt. No. 104-7. Second, Plaintiffs' attempt to distinguish the authority of the Governor and the Attorney General under Exec. Law § 63(2) is without merit as their roles are inextricably linked. If the Governor is not a proper party pursuant to Exec. Law § 63(2) due to the discretionary nature of her position, that necessarily extends to Attorney General James, whose responsibility is contingent on the Governor exercising said discretion. *See* N.Y. Exec. Law § 63(2); *Gazzola*, 2025 WL 2771835 at *10.

Beyond their unpersuasive attempts to distinguish the above-referenced cases, the crux of Plaintiffs' argument rests on a specific hypothetical in which Defendant Bragg is enjoyed from enforcing the Times Square Law, but not the Attorney General. (*See* Plaintiff's Opp., 4). This curated potentiality designed to suit Plaintiffs' arguments serves only to distract from the standard governing sovereign immunity analysis: Plaintiffs bear the burden of establishing standing. Standing to sue Attorney General James for prospective injunctive relief requires Plaintiffs to demonstrate that she has a particular duty to enforce the Times Square Law and a demonstrated willingness to do so. *See HealthNow New York, Inc.*, 739 F. Supp. 2d at 294. As discussed at length herein and in State Defendants' initial moving papers, the Attorney General clearly lacks any special enforcement duty as it pertains to the Times Square Law. Moreover, to date, Attorney General James has not been called upon to enforce the Times Square Law, and Plaintiffs' Amended

Complaint is devoid of any indication that such enforcement is forthcoming. (*See* Dkt. No. 33). Without more, Plaintiffs have plainly failed to meet their burden.

Ultimately, Attorney General James' general duties pursuant to Exec. Law § 63(2) are far too attenuated to establish the necessary connection to overcome Eleventh Amendment immunity contemplated by *Ex parte Young*. For these reasons, Plaintiffs' opposition should be rejected, and Attorney General James should be dismissed from the action.

## POINT II

## FPC STILL LACKS STANDING TO SUE

Plaintiffs' assertion that FPC has standing to bring suit is premised on faulty reasoning that should not be considered by this Court. Though State Defendants withdraw their arguments derived from *Aguayo*'s bar to associational standing in Section 1983 actions, FPC still lacks standing to pursue its claims against State Defendants. *Defending Education* affirmed the standard for associational standing articulated in *Hunt v. Wash. State Apple Advert. Comm'n*, which requires an organizational plaintiff to demonstrate, in relevant part, that "its members would otherwise have standing to sue in their own right." 432 U.S. 333, 343 (1977). In order to satisfy this element, the organization must identify, by name, at least one member who has suffered or would suffer harm. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 496 (S.D.N.Y. 2020). Though Plaintiffs Palma and Goldberger are purported members of FPC, as discussed in State Defendants' MOL, their alleged fear of prosecution under the Times Square Law is speculative. (State Defendants' MOL, 11-12). Such conjecture is not only insufficient to establish Plaintiffs Palma and Goldberger's standing, but it is fatal to FPC's claim of associational standing as well. *See Summers*, 555 U.S. at 498. Therefore, despite the Second Circuit's holding in *Defending Education*, FPC nonetheless lacks associational standing.

This argument notwithstanding, FPC further asserts that it is pursuing its claims on behalf of its members directly under *Ex parte Young*. (Plaintiff's Opp., 11-12). It appears to claim that the Supreme Court affirmed this right in *Armstrong v. Exceptional Child Ctr., Inc.* when it held that "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity." 575 U.S. 320, 327 (2015); (Plaintiff's Opp., 11). However, this assertion is misleading, as the Supreme Court was merely rejecting the respondent's contention that a cause of action seeking injunctive relief against state officials was created by the Supremacy Clause. *Armstrong*, 575 U.S. at 326-27. This opinion did not create additional avenues through which parties could seek declaratory relief against state officers. It, therefore, fails to advance Plaintiffs' arguments and should be given no weight by this Court.

Not only do Plaintiffs fail to cite any relevant case law in support of their position that FPC can simply ignore Section 1983, but the very existence of the statute demonstrably undercuts their argument. (*See* Plaintiff's Opp.). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, n. 3 (1979). By creating a channel through which suits in equity may be brought against state officials for alleged constitutional rights violations, such as what Plaintiffs are pursuing here, Section 1983 necessarily implies that it is the sole mechanism through which to pursue such actions. Otherwise, it would have no reason to exist.

*Ex parte Young* does nothing to mitigate these issues. Though the case was not brought pursuant to Section 1983, it did not involve an organizational plaintiff, nor did it address the issue of associational standing. *See Ex parte Young*, 209 U.S. 123 (1908). More importantly, in the context of the relief sought in the instant action, *Ex parte Young* is directly at odds with Section

1983. Section 1983 is a remedial mechanism created by Congress allowing, in relevant part, for actions to proceed in equity against state officials. *Ex parte Young* did not proceed under Section 1983, even though the petitioner sought equitable relief against the Attorney General. *Id.* at 129.

The issue of *Ex parte Young* conflicting with congressional acts made its way to the Supreme Court in the matter of *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996). In upholding the statute at issue in that case, the Supreme Court held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." *Seminole Tribe of Fla.*, 517 U.S. at 74 (questioned on other grounds). Such is the issue presented here. FPC asks the Court to allow it to assert its claim under *Ex parte Young*, despite the fact that Section 1983 provides for the exact avenue of relief Plaintiffs seek. (Plaintiffs' Opp., 11). As Section 1983 is the governing remedial scheme in this case, FPC cannot proceed directly under *Ex parte Young*.

In sum, even in light of *Defending Education*, FPC lacks standing to pursue its claims, and should be dismissed as a Plaintiff. At a minimum, FPC's claims brought under *Ex parte Young* should be dismissed pursuant to well-settled Supreme Court precedent.

## POINT III

## PLAINTIFFS PALMA AND GOLDBERGER LACK STANDING

Plaintiffs Palma and Goldberger effectively claim that they have standing to sue Attorney General James for the same reasons they claim that the Attorney General is a proper party. (Plaintiffs' Opp., 12-13). These arguments thus fail for the same reasons they fail to establish Attorney General James as a proper party. *See* discussion *supra*, 6-7. Ultimately, and as argued by State Defendants in their initial moving papers, Plaintiffs Palma and Goldberger's alleged fear that

Attorney General James will enforce the Times Square Law is wholly speculative, falling far short of "substantial likelihood" standard as required by this Circuit. *See Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 104 (2d Cir. 2018).

For these reasons, Plaintiffs Palma and Goldberger fail to establish their standing to sue Attorney General James, thus further necessitating her dismissal from the instant action.

**CONCLUSION**

For the reasons set forth above, and in their motion to Dismiss Memorandum of Law, State Defendants' respectfully request that their Motion to Dismiss be granted in its entirety.

Dated: New York, New York
October 9, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*

By:
/s/ *Daniel Luedtke*
Daniel Luedtke
Assistant Attorney General
28 Liberty Street - 18th Floor
New York, NY 10005
(212) 416-8213
daniel.luedtke@ag.ny.gov

**CERTIFICATION UNDER LOCAL CIVIL RULE 7.1**

According to Microsoft Word, and in compliance with Local Civil Rule 7.1(c), I certify that this Memorandum of Law contains 2,964 words.

Dated: New York, New York
October 9, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*

By:
*/s/ Daniel Luedtke*
Daniel Luedtke
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8213
daniel.luedtke@ag.ny.gov